UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN BOUDREAU,
o/b/o Patricia E. Boudreau (deceased),

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

DECISION & ORDER

18-CV-6681MWP

## PRELIMINARY STATEMENT

Plaintiff John Boudreau, on behalf of his deceased wife Patricia E. Boudreau ("Boudreau"),[1] brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Boudreau's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Patricia E. Boudreau, the original claimant, died on July 9, 2017. (Docket # 6-2 at 55, 226). As a result, her husband, plaintiff John Boudreau, was substituted in her place for purposes of her disability claims on November 8, 2017. (*Id.* at 42).

# DISCUSSION

## I.     Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Boudreau had not engaged in substantial gainful activity since April 2, 2012, the alleged onset date. (Tr. 12).[2] At step two, the ALJ concluded that Boudreau had the severe impairments of "obesity[,] degenerative changes in the lumbar spine[,] fibromyalgia[,] and left knee degenerative arthritis." (Tr. 13). The ALJ also concluded that Boudreau suffered from major depressive disorder, but that the impairment was nonsevere. (Tr. 13-15). At step three, the ALJ determined that Boudreau did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 16-17).

The ALJ concluded that Boudreau retained the RFC to perform light work, except that she was limited to standing and/or walking for four hours in an eight-hour workday, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, never climbing ladders, ropes, or scaffolds, and never being exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. (Tr. 17).

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

At steps four and five, the ALJ found that Boudreau was unable to perform her past relevant work, but that other jobs existed in the national economy that Boudreau could perform, including the positions of cashier II and ticket seller. (Tr. 20-21). Accordingly, the ALJ concluded that Boudreau was not disabled. (Tr. 21-22).

### III. Boudreau's Contentions

Boudreau contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 7, 13). First, Boudreau argues that the ALJ failed to explain his decision not to include a reaching limitation in the RFC, even though consultative examiner Dr. Seema Khaneja ("Khaneja"), MD, opined that Boudreau had a "moderate" reaching limitation and the ALJ afforded that opinion "great weight." (Docket ## 8-2 at 16-20; 13 at 1-2). Second, Boudreau maintains that the ALJ erroneously found that she did not have a severe mental impairment at step two of the sequential analysis. (Docket # 8-2 at 20-24).

### IV. Analysis

#### A. The ALJ's Step Two Determination

I turn first to Boudreau's severity argument concerning her mental impairment, as it relates to a determination made earlier in the sequential analysis than the determination to which her first argument relates. *See, e.g.*, *McIntosh v. Berryhill*, 2018 WL 4376417, *17 (S.D.N.Y.) ("[r]ather than address [p]laintiff's arguments in the order in which they are raised in his brief, this [c]ourt will . . . address[] [p]laintiff's final argument . . . given that it relates to an

earlier step of the five-step sequential evaluation than do [p]laintiff's other arguments"), *report and recommendation adopted by*, 2018 WL 4374001 (S.D.N.Y. 2018).

In maintaining that the ALJ erroneously concluded that Boudreau did not have any severe mental health impairments, Boudreau advances two arguments. First, she contends that the ALJ improperly relied on the opinion of state agency, non-examining consultant T. Harding ("Harding"), PhD. (Docket # 8-2 at 21-23). Second, Boudreau claims that the ALJ failed to "consider a single mental health treatment note" in reaching his severity determination. (*Id.* at 21, 23-24). I agree that the ALJ erred in considering Boudreau's mental health impairment, but for reasons different than those asserted by Boudreau.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). It is the claimant's burden to present evidence demonstrating severity at step two. *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y. 2011). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where a claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique." *See Kohler v.*

6

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e).³ "If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." *Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (citing 20 C.F.R. § 404.1520a(c)(3)). "If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas." *Id.* (alterations and quotations omitted).

Here, the ALJ recognized at step two that Boudreau's major depressive disorder was a medically determinable mental impairment, but found that the condition was not severe because it did not cause more than minimal limitations in Boudreau's ability to perform "basic mental work activities." (Tr. 13 (citing Tr. 524)). Applying the "special technique," the ALJ explained that Boudreau had only "mild" limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence, and pace, and that Boudreau experienced no episodes of decompensation of extended duration. (Tr. 13-14). In reaching this conclusion, the ALJ cited to Boudreau's own reports of pain and functional abilities, treatment records, and medical opinions, including Harding's, the opinion of examining consultative

---

³ These regulations were amended, effective March 27, 2017. The amendments reflect new functional areas the Commissioner uses to rate the degree of a claimant's functional limitations: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (effective March 27, 2017). It is clear, however, that the ALJ applied the version of these regulations applicable at the time of his decision on January 11, 2017, which assessed a claimant's functional limitations in: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See id.* (effective from June 13, 2011 to January 16, 2017). Reference to these regulations in this decision, therefore, will be to the version applicable at the time of the ALJ's decision.

psychologist Adam Brownfield ("Brownfield"), PhD, and the opinion of licensed master social worker Kay Loree. (Tr. 13-15).

Boudreau's arguments relating to her mental impairment focus on whether the ALJ's severity determination was supported by substantial evidence. In my view, the more consequential issue evident from consideration of the ALJ's decision, although not explicitly raised by Boudreau, is the ALJ's complete failure to analyze Boudreau's mental health impairment in determining her RFC.

Regardless of whether an impairment qualifies as severe or nonsevere at step two, an ALJ still must consider the impact of all of a claimant's medically determinable impairments when assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("[the Commissioner] will consider all of [a claimant's] medically determinable impairments of which [the Commissioner] [is] aware, including [a claimant's] medically determinable impairments that are not 'severe' . . . when [the Commissioner] assess[es] [a claimant's] [RFC]"); *see also Rogers v. Berryhill*, 2017 WL 3483666, *4 (W.D.N.Y. 2017) ("[w]hen an ALJ finds that a claimant has nonsevere impairments, like the ALJ did here, the ALJ must consider those impairments when he or she assesses the claimant's RFC"). As a result, "[a]n error at step two – either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe – can be harmless if the ALJ continues the analysis and considers all impairments in his RFC determination." *Pacholski v. Berryhill*, 2018 WL 3853388, *3 (W.D.N.Y. 2018) (alteration and citation omitted). But where, as here, "the ALJ fails to account for the claimant's nonsevere impairments when determining [the claimant's] RFC[,] . . . [r]emand is required[.]" *Id.*

The ALJ's RFC analysis did not include any explicit discussion or evaluation of Boudreau's major depressive disorder, and the RFC likewise did not contain any limitations associated with that impairment. (*See generally* Tr. 17-20). This is problematic because, as discussed above, the ALJ found Boudreau's depression to be a nonsevere medically determinable impairment and was therefore required to consider the impairment in the RFC analysis. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In addition, while the ALJ's application of the "special technique" at step two discussed evidence relevant to Boudreau's mental impairment, it is well-established that the step two analysis is "analytically distinct" from the ALJ's subsequent RFC analysis. *See*, *e.g.*, *Cintron v. Berryhill*, 2018 WL 1229731, *10 (S.D.N.Y. 2018) ("[a]t step two, the ALJ found that [claimant's] mental conditions were nonsevere[;] . . . [h]owever, it is not clear from the ALJ's analysis that she separately considered [evidence discussed at step two relating to claimant's mental impairments] in determining [claimant's] RFC, as she was required to do[;] . . . [i]nstead, the ALJ's analysis seems to commingle the step two determination of severity with the determination of [claimant's] RFC[;] [f]urthermore, the ALJ also failed to make any findings regarding [claimant's] ability to perform a variety of work-related functions, such as his ability to respond appropriately to supervision, coworkers, and work situations[;] [t]hus, the [c]ourt cannot determine whether her determination of [claimant's] RFC was proper"); *Golden v. Colvin*, 2013 WL 5278743, *3-4 (N.D.N.Y. 2013) (ALJ erred where his decision "d[id] not reflect that he engaged in *any* further assessment of functional effects of [claimant's] mental impairments beyond determinations previously made at [s]teps 2 and 3 under the 'special technique'"; while the "special technique" applied at steps two and three may "relate[] to" the ALJ's mental RFC analysis, it is "entirely separate and analytically distinct from[] a *subsequent*

9

determination of mental *residual functional capacity*[;] [s]tep 2 and [s]tep 3 findings regarding functional limitations, while pertinent, do not suffice as a mental residual functional capacity determination") (emphasis in original). Therefore, the ALJ's discussion of this evidence at step two did not relieve him of the requirement to further discuss Boudreau's mental health impairment in the RFC portion of his decision.

Moreover, the ALJ's boilerplate statement at step two that his RFC "assessment reflects the degree of limitation [he] found in the . . . mental function analysis" does not otherwise cure his flawed RFC analysis. *See*, *e.g.*, *Davis v. Saul*, 2019 WL 6682159, *4 (W.D.N.Y. 2019) ("other than baldly asserting that [claimant's] RFC 'reflects the degree of limitation [the ALJ] found in the . . . mental function analysis,' the ALJ never made that 'more detailed assessment' [in the RFC analysis] – at least not in a way that permits review by this [c]ourt") (citation omitted); *Zochios v. Berryhill*, 2018 WL 1835451, *4 (W.D.N.Y. 2018) ("[r]egardless of whether the ALJ properly classified [claimant's] mental impairments as nonsevere, remand is required because he did not consider those nonsevere impairments when assessing her RFC[;] . . . [t]he ALJ's step two conclusion includes boilerplate language indicating that the RFC assessment 'reflects the degree of limitation [he] found in the . . . mental function analysis,' however, the ALJ's RFC analysis does not mention [claimant's] anxiety or bipolar disorders and the RFC determination lacks any related mental limitations").

I also disagree with the Commissioner's argument that the ALJ's mental RFC error was harmless (Docket # 12-1 at 26), particularly given that Brownfield opined that Boudreau was "moderately limited in appropriately dealing with stress" (Tr. 524). The Commissioner points out that the vocational expert testified at the administrative hearing that the occupations identified at step five could be performed by individuals limited to simple, routine

tasks and frequent interaction with supervisors, coworkers, and the general public, and that these limitations would accommodate Boudreau's mental impairments. (*Id.* (citing Tr. 270-71)).

It is well-settled, however, that "when determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Reyes v. Colvin*, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting Social Security Ruling 85-15, 1985 WL 56857, *4-5 (1985)). The ALJ failed to perform this "thorough, individualized RFC evaluation" concerning Boudreau's mental impairment because he completely failed to discuss her mental limitations in the RFC analysis. The ALJ's one question to the vocational expert at the administrative hearing is insufficient to cure this defect because it is not at all clear that limiting Boudreau to simple, routine tasks, or to "frequent" interaction with supervisors, coworkers, and the general public would accommodate her mental impairments. *See Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) ("[b]ecause stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low-stress" jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work") (citation omitted).

Accordingly, I find that the ALJ's mental RFC error was obvious from a review of his decision and was not harmless. Therefore, remand is required. *See*, *e.g.*, *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("even if this [c]ourt concluded that substantial evidence supports the ALJ's finding that [claimant's] mental impairment was

nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [for claimant's] mental limitations when determining her RFC[;] . . . [i]n this case, after finding that [claimant's depression was nonsevere,] . . . the ALJ determined [claimant's] RFC without accounting for any of the limitations arising from her mental impairment that were established by substantial evidence in the record[;] [t]hus, the ALJ committed legal error"); *MacDonald v. Comm'r of Soc. Sec.*, 2019 WL 3067275, *4 (W.D.N.Y. 2019) ("[i]f [claimant's] RFC had included some limitations reflecting the [nonsevere] mild mental impairments that the [ALJ] found at step two, this [c]ourt might conclude that any error [at step two] was harmless[;] [b]ut because her RFC includes no mental restrictions or limitations whatsoever[,] . . . this [c]ourt cannot be certain that the ALJ actually considered her mental issues when addressing her RFC[;] [t]herefore, even if substantial evidence supports the ALJ's determination that [claimant's] mental impairment was not severe at step two, remand is still necessary for further consideration because the ALJ failed to account [for claimant's] mental limitations when determining her RFC") (quotations omitted); *Pacholski v. Berryhill*, 2018 WL 3853388 at *3 ("[r]egardless of whether the ALJ properly classified these impairments as nonsevere, remand is required because he did not consider them when assessing [claimant's] RFC").

### B. Boudreau's Remaining Contention

In light of my determination that remand is required for further evaluation of Boudreau's mental impairments, I do not reach Boudreau's remaining contention – that the ALJ erroneously failed to incorporate a reaching limitation in the RFC (*see* Docket ## 8-2 at 16-20; 13 at 1-2). *Girolamo v. Colvin*, 2014 WL 2207993, *9 (W.D.N.Y. 2014). On remand, however,

I urge the ALJ to consider Boudreau's contention and to review the step two determination that her shoulder impairment did not qualify as a medically determinable impairment.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Boudreau's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                                    *s/Marian W. Payson*
                                                                    MARIAN W. PAYSON
                                                                    United States Magistrate Judge

Dated: Rochester, New York
       March 30, 2020